**Bruce Eugene McLEOD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–99–01157–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2001.

Richard B. Kuniansky, Houston, TX, for appellants.

Rikke Burke Graber, Houston, TX, for appellees.

Panel consists of Justices YATES, FOWLER, and WITTIG.

## OPINION

FOWLER, Justice.

Appellant pled not guilty to intoxication manslaughter and felony driving while intoxicated ("DWI"). A jury found appellant guilty of intoxication manslaughter and made a finding that appellant's motor vehicle was a deadly weapon. The jury sentenced appellant to 18 years' confinement in the Institutional Division of the Texas Department of Criminal Justice, and assessed a $10,000.00 fine. In two points of error, appellant appeals his conviction, and contends that the trial court erred (1) by permitting the reading of an indictment to the jury that contained prior convictions for driving while intoxicated in an intoxication manslaughter case, and (2) by permitting a third driving under the influence ("DUI") conviction to be proved during the punishment phase of trial with a document that was not properly authenticated and which contained hearsay. We affirm.

## FACTUAL BACKGROUND

Twelve-year-old M.Q.M. ("complainant") left home on his bicycle on the afternoon of October 31, 1998—Halloween. He and some other children were riding their bicycles alongside Anderson Road to a drug store so that the complainant could buy some makeup for his Halloween costume. At the same time, appellant was driving his car on Anderson Road. According to appellant, the complainant swerved into

the path of his car; appellant collided with the complainant and his bicycle.

Fred Taylor, a witness who also was driving along Anderson Road, saw the car hit the complainant. Taylor testified that, after the impact, the car continued down Anderson Road in an erratic manner, weaving from side to side and into the lane of oncoming traffic. The car finally came to a stop facing the wrong direction in the lane of oncoming traffic. The force of the impact had hurled the complainant through the passenger side windshield of appellant's car. Taylor parked his car across the street, approached the vehicle, and looked inside. He saw the complainant slumped under the glove compartment.

When appellant emerged from his car, he was visibly distraught. After Taylor told appellant the complainant was dead, he stated, "It wasn't my fault. It wasn't my fault. He was just in the way." Taylor testified that appellant's speech was impaired, and that he was wobbling and unable to control his actions.

The evidence showed appellant was clearly intoxicated. The officers at the scene smelled alcohol on appellant. The intoxilyzer and blood tests that appellant consented to revealed that his blood alcohol content was well over the legal limit.[1]

At trial, the issue of causation was hotly contested. The State's own witnesses testified that the complainant swerved in front of appellant's car. Appellant called an accident reconstruction expert, Dirk Smith, who testified at length regarding "perception reaction time," which he defined as the time from which an unexpect- ed event first becomes perceived until the time at which a person can first react to the perceived event. Smith testified that in this case, based upon factors such as the speed of appellant's vehicle, the speed of the bike, and the angle of the collision, appellant would have had only 0.4 to 0.6 of a second to avoid the accident. Smith further testified that the average "perception reaction time" is 1.5 to 2.0 seconds. As a result, Smith concluded that appellant's consumption of alcohol did not cause the complainant's death.

## PROCEDURAL HISTORY

Initially, the State indicted appellant for intoxication manslaughter only. Appellant then filed a motion in limine, requesting that the State be prohibited from making any reference during the entire trial to prior criminal offenses, particularly prior instances of DWI. The State then filed a second indictment which alleged both intoxication manslaughter and felony DWI (also known as third offender DWI).[2] Appellant filed a motion that the paragraphs of the indictment alleging felony DWI (that is, the paragraphs relating to the two prior alleged DWI convictions) not be read to the jury. At a hearing on this motion, just prior to trial, appellant offered to stipulate to the two prior DWI convictions. Appellant also argued that reading these paragraphs would be prejudicial and unnecessary to confer jurisdiction on the court, because the court already had jurisdiction over felony DWI because it was a lesser included offense of the intoxication manslaughter charge. The State argued that it needed to plead jurisdictional facts

1. The legal limit at the time of this offense was .10. The intoxilyzer measured appellants blood alcohol level at .156, while the blood test measured it at .13.

2. The offense of DWI, while ordinarily a misdemeanor, becomes a felony of the third degree upon proof that the offender has previously been convicted two times of an offense relating to the operation of a motor vehicle while intoxicated. Tex. Pen.Code Ann. § 49.09(b) (Vernon Supp.2000).

for felony DWI precisely because it is a lesser included offense of intoxication manslaughter, and as such, the jury could have found appellant guilty only of the felony DWI charge. The State argued that, if the jury wanted to find appellant guilty of DWI rather than of intoxication manslaughter, the jurisdictional elements of felony DWI had to be pled in the indictment, otherwise appellant's punishment would be for a misdemeanor, rather than a felony. The court overruled appellant's motion.

The court informed the venire about felony DWI, and the lawyers for both sides questioned the venire about it. After the jury was empaneled, the State read the indictment at the beginning of trial, mentioning the two prior convictions to which appellant had agreed to stipulate. In its case-in-chief, the State did not present evidence of the prior convictions.

## DISCUSSION AND HOLDINGS

### A. Felony DWI

In his first point of error, appellant alleges that the trial court erred by permitting the reading of the indictment to the jury in this case because it contained allegations of two prior DWI convictions. For two reasons, he argues that this was error: (1) where he offered to stipulate to the DWI convictions, reading those to the jury was of little probative value, but was outweighed by the potential prejudice of the prior convictions, and thus violated Rule 403 of the Texas Rules of Evidence; and (2) to the extent that the paragraphs of the indictment conferred jurisdiction on the trial court for the felony DWI charge, they were unnecessary, and thus violated Rule 403, because the court already had jurisdiction over the entire case because of the intoxication manslaughter charge. Both of these claims are controlled by the Texas Court of Criminal Appeals' decision in *Ta-*

*mez v. State,* 11 S.W.3d 198 (Tex.Crim. App.2000).

### 1. *Tamez v. State*

In *Tamez v. State,* the State indicted Tamez for felony DWI, and alleged in the indictment that appellant had six previous misdemeanor DWI convictions. *Id.* at 199. Prior to trial, Tamez offered to stipulate to two previous DWI convictions if the court would prevent the State from mentioning, in any way, his prior DWI convictions. *Id.* The court refused. *Id.* Additionally, during trial, the State introduced the six judgments against Tamez into evidence during its case-in-chief. *Id.* The court of criminal appeals first concluded that the two prior convictions were jurisdictional allegations rather than merely enhancement allegations. *Id.* Tamez's willingness to stipulate to two prior DWI convictions vested the trial court with jurisdiction. *Id.* at 201. Thus, since the trial court already had jurisdiction, any additional prior DWI convictions wholly lacked probative value and, therefore, could not be read to the jury. *Id.* at 202–03. The court went on to hold that when a defendant stipulates to the two prior DWI convictions, the State may, at the beginning of trial, read the indictment to the jury, including allegations of those two convictions, but the State is precluded from proving those convictions during its case-in-chief. *Id.*

### 2. The Trial Court's Jurisdiction

■ Though appellant was convicted only on the intoxication manslaughter charge, he was also charged with felony DWI. At trial, appellant argued that felony DWI is a lesser included offense of intoxication manslaughter, so the State's inclusion of two prior DWI convictions in the indictment prejudiced him. On appeal, appellant adopts a slightly different approach, arguing that the court had juris-

diction over the entire case solely due to the intoxication manslaughter charge.

 A trial court has no jurisdiction to convict a defendant of an offense not charged in an indictment unless that offense is a lesser included offense of the crime charged. *Garcia v. Dial,* 596 S.W.2d 524, 527 (Tex.Crim.App.1980); *Foster v. State,* 834 S.W.2d 494, 497 (Tex. App.—Houston [14th Dist.] 1992, no pet.). *Tamez* held that, for a court to gain jurisdiction over a felony DWI charge, the State must include two prior DWI convictions in the indictment. 11 S.W.3d at 201. Because felony DWI includes the jurisdictional prerequisites of two prior DWI convictions, and intoxication manslaughter does not, felony DWI is not a lesser included offense of intoxication manslaughter. *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.1993). Thus, here, the intoxication manslaughter indictment, alone, did not confer jurisdiction on the trial court over the felony DWI. Appellant's argument to the contrary is overruled.

### 3. Reading the Indictment

 Our resolution of appellant's claim that the DWI convictions should not have been read to the jury is also controlled by the Texas Court of Criminal Appeals' holding in *Tamez.* When faced with an argument analogous to appellant's, the court held,

> [a] balance must be struck between Article 36.01(a)(1), which authorizes the reading of the full indictment (and by this action implicitly authorizes the proof of the previous convictions in the State's

case-in-chief), and Rule 403, which proscribes this evidence if there is a strong likelihood that the jury may improperly use it in reaching its verdict. In cases where the defendant agrees to stipulate to the two previous DWI convictions, we find that the proper balance is struck when the State reads the indictment at the beginning of trial, mentioning only the two jurisdictional prior convictions, but is foreclosed from presenting evidence of the convictions during its case-in-chief. This allows the jury to be informed of the precise terms of the charge against the accused, thereby meeting the rationale for reading the indictment, without subjecting the defendant to substantially prejudicial and improper evidence during the guilt/innocence phase of trial.

11 S.W.3d 198, 202 (Tex.Crim.App.2000). Accordingly, in this case, the proper balance has been struck. Unlike *Tamez,* here the State charged appellant in a single indictment with intoxication manslaughter and felony DWI. However, just as the *Tamez* court instructed, (1) appellant agreed to stipulate to the two previous DWI convictions, (2) the State read the indictment at the beginning of trial, and (3) the State presented no evidence at the guilt-innocence phase regarding the jurisdictional enhancements. As a result, the State was allowed to present both theories of guilt to the jury, while appellant was protected from the prejudice that might have resulted had the State been able to prove the prior convictions in its case-in-chief.[3]

---

**3.** In appellant's brief, he states that the court mentioned to the venire that felony DWI entails two prior DWI convictions. Appellant cites to the voir dire testimony of several veniremembers who expressed concern that evidence of prior DWI convictions would lead them to believe appellant must be guilty of the

crime(s) charged. However, the record reflects that every veniremember who expressed such a concern was struck by agreement of the State and the defense. To that end, none of the veniremembers selected for jury service in this case voiced such a concern. Therefore, those concerns are no evidence that this

In addition to following the *Tamez* requirements, the trial court charged the jury first on intoxication manslaughter and then on felony DWI. The two prior DWI convictions are first mentioned in the felony DWI portion of the charge. There, the court instructed the jury "that such evidence cannot be considered by you as in any manner proving or tending to prove that the defendant did or did not drive or operate a motor vehicle in a public place while intoxicated on or about the 31st day of October, 1998."

In short, *Tamez* considered the prejudicial effect that could occur in a case like this. Although the present case involves a single indictment alleging intoxication manslaughter and felony DWI, while *Tamez* involves excessive allegations of prior DWI convictions, *Tamez* analyzes the prejudicial effect that could occur when a jury, through the indictment, is informed that the defendant has two or more prior DWI convictions. The requirements set forth in *Tamez* are tailored to ensure that the jury knows of the precise terms of the particular charge against the accused, while minimizing the likelihood that the jury will "improperly focus on the previous convictions or the defendant's 'bad character.'" *Id.* at 201–02. We find that applying the *Tamez* requirements to this case strikes the balance sought by the *Tamez* court, and substantially lessens the likelihood that the jury improperly focused on appellant's prior DWI convictions, or appellant's bad character, in determining his guilt under either the intoxication manslaughter or felony DWI charge. *See id.*

Consequently, we hold that the trial court did not err in permitting the State to read the prior DWI convictions to the jury

in this case. Appellant's first point of error is overruled.

## B. Admissibility of Evidence During Punishment Phase

In appellant's second point of error, he contends that the trial court erred in allowing the State to prove, during the punishment phase of trial, that appellant was convicted in Kansas in 1993 of DUI. Appellant argues that this conviction was proven by a document that was not properly authenticated, and contained inadmissible hearsay.

■ The document appellant challenges, State's exhibit 35, includes a certification form signed by a deputy officer in Kansas. The certification form states that the officer is the legal custodian of the attached abstract of record and fingerprint card on file at the Kansas Bureau of Investigation. This document was notarized and bore the seal of a Notary Public for the State of Kansas. State's exhibit 36 is a certified copy of a journal entry from the district court of Marshall County, Kansas. It reflects appellant's entry of a guilty plea on December 22, 1993 to the offense of DUI. The State introduced both of these exhibits to demonstrate that appellant, Bruce E. McLeod, was the same Bruce E. McLeod that entered a plea of guilty to DUI in Kansas. Appellant does not challenge on appeal, and did not challenge at trial, the admissibility of State's exhibit 36.

### 1. Authentication

Through authentication, the proponent of an exhibit proves that the exhibit is what its proponent claims. TEX.R. EVID. 901(a). A writing cannot be admitted into evidence until the proponent establishes its identity and authorship. *Id.* This can be

jury was tainted by the appellant's two prior DWI convictions. Moreover, no other evidence in the record reflects that the jury

made its decision contrary to the court's charge and, instead, on inappropriate assumptions.

accomplished in several ways, including by self-authentication. *Id.* at 902. A document that is "accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments" is self-authenticated. *Id.* at 902(8). We hold that under rule 902(8), State's exhibit 35 was self-authenticated.

### 2. Hearsay

■ Rule 902 only addresses the authentication issue. Even though a document may be self-authenticated, it still may be inadmissible because it is hearsay. At trial, appellant objected that State's exhibit 35 contains hearsay and stated that "on the very back page, it's got some notes, including: 'leaving scene of accident.'" Appellant complained that he could not cross-examine that statement. The State responded that it "would be prepared to redact that." The court admitted State's exhibit 35 contingent on the redaction of that statement. The exhibit, as found in the record, appears to have been redacted accordingly.

■ On appeal, appellant complains that the fingerprint card was also hearsay. The fingerprint card contains fingerprints, appellant's signature, and identification information such as appellant's date of birth, race, sex, height, weight, hair color, place of birth, social security number, date of arrest, and address. Hearsay is a verbal or non-verbal statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX.R. EVID. 801(d). Public records are excepted from the hearsay exclusion if they set forth matters observed under a legal duty to report such matters, excluding, in criminal cases, matters observed by police officers and other law enforcement personnel. *Id.* at 803(8)(B). The exclusionary clause, which prohibits from this hearsay exception matters observed by police officers, only applies where possible impairment of judgment is implicated, such as observations made by officers at the scene of a crime. *Pondexter v. State,* 942 S.W.2d 577, 585 (Tex.Crim.App.1996). The information conveyed in the fingerprint card was made under a "duty imposed by law as to which matters there was a duty to report." TEX.R. EVID. 803(8)(B). The information contained on the fingerprint card reflects routine observations, made in connection with appellant's former DUI conviction. The information contained on the fingerprint card should therefore be presumed reliable. *Pondexter,* 942 S.W.2d at 585. Thus, the trial court did not err in admitting the fingerprint card, and appellant's second point of error is overruled.

Having overruled both of appellant's points of error, we affirm the judgment of the trial court.