## TEXAS DEPARTMENT OF PUBLIC SAFETY, Petitioner,

v.

## Stephen Joseph CARUANA, Respondent.

### No. 10–0321.

Supreme Court of Texas.

Argued Sept. 14, 2011.

Decided March 30, 2012.

Kevin M. Givens, Texas Dept. of Public Safety, Austin, TX, for Texas Department of Public Safety.

Brian Lee Baker, Attorney at Law, San Marcos, TX, for Stephen Joseph Caruana.

Justice HECHT delivered the opinion of the Court, in which Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, Justice JOHNSON, Justice WILLETT, and Justice GUZMAN joined.

The issue in this case is whether a peace officer's arrest report must be excluded from evidence if not sworn as required by law. Because it is no less a criminal offense to make a false statement in a governmental record than it is to make one under oath, we hold that an officer's failure to swear to a report does not deprive it of the assurance of veracity or render it inadmissible. Consequently, we reverse the court of appeals' judgment[1] and remand the case to that court.

Stephen Joseph Caruana, age 21, was arrested by state trooper Eric Flores for driving while intoxicated.[2] A person arrested for driving while intoxicated in Texas is deemed to have consented to submit

---

1.  363 S.W.3d 606 (Tex.App.-Austin 2010).

2.  "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code § 49.04(a). A person under 21 years of age, a

"minor" under the Alcoholic Beverage Code, "commits an offense if the minor operates a motor vehicle in a public place ... while having any detectable amount of alcohol in the minor's system." Tex. Alco. Bev.Code §§ 106.01, 106.041(a).

to the taking of a breath or blood specimen to determine its alcohol concentration.[3] Under the state Administrative License Revocation ("ALR") program, if the person refuses to provide a specimen, or if the specimen provided has an alcohol concentration in excess of the legal limit, the Texas Department of Public Safety will automatically suspend the person's driver's license.[4] Flores requested a breath specimen from Caruana and read him the statutory warning about possible consequences of providing or refusing to provide a specimen.[5] Caruana provided a specimen that tested 0.163 and 0.157, about twice the legal limit.

Flores filed an arrest report with the Texas Department of Public Safety.

When a person provides a specimen that fails the alcohol concentration test, suspension of his driver's license is governed by chapter 524 of the Texas Transportation Code.[6] The arresting officer is required to send the department "a sworn report of information relevant to the arrest."[7] Had Caruana refused to provide the requested specimen, administrative suspension of his driver's license would have been governed by chapter 724 of the Texas Transportation Code. In that situation, the arresting officer must only "make a written report of the refusal" for the department.[8] Chapter 724 does not require the report to be sworn.[9]

The Department suspended Caruana's driver's license, and Caruana requested an

3. TEX. TRANSP. CODE § 724.011(a) ("If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place ... while intoxicated, ... the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.").

4. TEX. TRANSP. CODE §§ 724.035(a) ("If a person refuses the request of a peace officer to submit to the taking of a specimen, the department shall: (1) suspend the person's license to operate a motor vehicle on a public highway for 180 days ...."), 524.012(b) ("The department shall suspend the person's driver's license if the department determines that: (1) the person had an alcohol concentration of a level specified by Section 49.01(2)(B), Penal Code, while operating a motor vehicle in a public place...."); TEX. PENAL CODE § 49.01(1) ("'Alcohol concentration' means the number of grams of alcohol per: (A) 210 liters of breath; (B) 100 milliliters of blood; or (C) 67 milliliters of urine."); id. § 49.01(2) ("'Intoxicated' means: ... (B) having an alcohol concentration of 0.08 or more.").

5. TEX. TRANSP. CODE § 724.015 (before requesting that a person submit to the taking of a specimen, an officer shall inform the person,

orally and in writing, of, e.g., that a refusal or overlimit result will result in a license suspension). Flores read Caruana a "Statutory Warning" from a standard form DIC–24 that stated in part: "You will be asked to give a specimen of your breath and/or blood.... If you refuse ... [,][y]our license ... to operate a motor vehicle will be suspended.... If you are 21 years of age or older and submit to the taking of a specimen and an analysis of the specimen shows that you have an alcohol content of 0.08 or more, your license ... to operate a motor vehicle will be suspended...."

6. TEX. TRANSP. CODE § 524.011(a) ("An officer arresting a person shall comply with Subsection (b) if: (1) the person is arrested for [driving while intoxicated], submits to the taking of a specimen of breath or blood and an analysis of the specimen shows the person had an alcohol concentration of a level specified by Section 49.01(2)(B), Penal Code ....").

7. Id. § 524.011(b)(4)(D).

8. TEX. TRANSP. CODE § 724.032(a)(4); see also id. § 724.031 (if a person refuses the request for a specimen, "the peace officer shall request the person to sign a statement" regarding the request, warning, and refusal).

9. Id. § 724.031.

administrative hearing to challenge the suspension.[10] At that hearing, conducted by an administrative law judge ("ALJ") employed by the State Office of Administrative Hearings ("SOAH"),[11] the Department called Flores to testify and offered his report of the incident.[12] Although the report stated that Flores had sworn to it,[13] he admitted on questioning by Caruana's counsel that he had not actually done so. Caruana's counsel objected to admission of the report on that basis.

Under the Administrative Procedure Act and SOAH rules, ALR proceedings are governed by "the rules of evidence as applied in a non-jury civil case in a district court of this state".[14] Rule 803(8) of the Texas Rules of Evidence, applicable in district courts, states that the following are not excluded from evidence by the hearsay rule:

Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth:

(A) the activities of the office or agency;

(B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or

(C) in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law;

unless the sources of information or other circumstances indicate lack of trustworthiness.[15]

SOAH's Rule 159.23,[16] in effect at the time, also provided that "[a]n officer's sworn

---

10. *See* Tex. Transp. Code § 524.031 ("If, not later than the 15th day after the date on which the person receives notice of suspension . . ., the department receives at its headquarters in Austin, in writing, including a facsimile transmission, or by another manner prescribed by the department, a request that a hearing be held, a hearing shall be held as provided by this subchapter.").

11. *See id.* § 524.033(a) ("A hearing under this subchapter shall be heard by an administrative law judge employed by the State Office of Administrative Hearings.").

12. Caruana's counsel requested Flores' presence, as the certified breath test operator, pursuant to former 1 Tex. Admin. Code § 159.15(a) (2008) (State Office of Admin. Hearings, Hearings) (applicable to cases under Chapter 524 of the Transportation Code), repealed by 34 Tex. Reg. 329 (2009). Under the current provisions, a defendant may request a subpoena from the ALJ for the breath test operator or technical supervisor, under § 159.101, and issue a subpoena for other witnesses, under limitations set by those rules. 1 Tex. Admin. Code §§ 159.101 (Breath Test Operator and Technical Supervisor), .103 (Subpoenas) (2012), adopted by 34 Tex. Reg. 330, 332–333 (2009).

13. The statement read: "SWORN AND SUBSCRIBED before me on the *14th* day of *January, 2008 Scott Haag* ~~Notary Public~~ *Peace Officer # 4885*, State of Texas".

14. Tex. Gov't Code § 2001.081 ("The rules of evidence as applied in a nonjury civil case in a district court of this state shall apply to a contested case except that evidence inadmissible under those rules may be admitted if the evidence is: (1) necessary to ascertain facts not reasonably susceptible of proof under those rules; (2) not precluded by statute; and (3) of a type on which a reasonably prudent person commonly relies in the conduct of the person's affairs."); 1 Tex. Admin. Code § 159.211(b) (2012), replacing 1 Tex. Admin. Code § 159.23(b) (2009), adopted by 19 Tex. Reg. 10221, 10228 (1994), repealed by 34 Tex. Reg. 329 (2009).

15. Tex.R. Evid. 803(8).

16. 1 Tex. Admin. Code § 159.23(c)(7) (2008), repealed by 34 Tex. Reg. 329 (2009), replaced by 1 Tex. Admin. Code § 159.211 (2012), adopted by 34 Tex. Reg. 334, 335 (2009); *see also* former 1 Tex. Admin. Code § 159.15(c) (2009).

report of relevant information shall be admissible as a public record."[17] Rule 803(8) does not require that reports be sworn to be admissible. Rule 159.23 did not specifically address unsworn reports.

The ALJ overruled Caruana's objection. Flores then testified that everything in the report was true and correct "to the best of my knowledge." Based on the report and the breath test results, the ALJ sustained the suspension of Caruana's driver's license.

Caruana appealed to the county court, which reversed the administrative ruling. On appeal by the Department, a divided court of appeals affirmed the county court.[18] The majority concluded that to admit unsworn reports in evidence would be inconsistent with Rule 159.23's specific provision making sworn reports admissible and would allow the Department to circumvent the statutory requirement that reports be sworn.[19] To sustain the suspension of Caruana's license, the Department was required to prove not only that the alcohol concentration in his breath exceeded the legal limit, but that he had been operating a motor vehicle in a public place at the time and that there was probable cause to arrest.[20] Flores did not provide such evidence himself, and therefore, the majority held, without the report there was no evidence to support the ALJ's ruling.[21] The dissent argued that admission of

unsworn reports was not specifically prohibited by Rule 159.23 and is permitted by Rule 803(8).[22]

We granted the Department's petition for review.[23]

The Department argues that the court of appeals misconstrued the text of Rule 159.23. We agree. By expressly providing for the admission of sworn reports, the rule does not imply that unsworn reports are inadmissible. The inverse of a statement is not always true. Thus, if B is true when A is true—all men (A) are mortal (B)—it does not follow that B is false when A is false—all other creatures (not-A) are immortal (not-B). The fact that a sworn report (A) is admissible (B) does not mean that an unsworn report (not-A) is inadmissible (not-B); as a matter of logic, the former simply does not speak to the latter. By expressly making sworn reports admissible, Rule 159.23 does not foreclose the admission of unsworn reports; rather, it leaves the matter to Rule 803(8), which imposes no condition that public offices' reports be sworn.

Furthermore, the admission of unsworn reports does not subvert the statutory ALR scheme. Chapter 724, which governs cases in which a driver has refused to provide a specimen, has its origins in a 1969 statute, which required an officer's report to be sworn.[24] The requirement assured the report's truthfulness by sub-

---

17. 1 TEX. ADMIN. CODE § 159.23(c)(7) (2009).

18. 363 S.W.3d 606 (Tex.App.-Austin 2010).

19. *Id.* at 611.

20. "The issues that must be proved at a hearing by a preponderance of the evidence are: (1) whether: (A) the person had an alcohol concentration of a level specified by Section 49.01(2)(B), Penal Code, while operating a motor vehicle in a public place . . .; and (2) whether reasonable suspicion to stop or probable cause to arrest the person existed." TEX. TRANSP. CODE § 524.035(a). "If the administrative law judge finds in the affirmative on each issue in Subsection (a), the suspension is

sustained." TEX. TRANSP. CODE § 524.035(b). "If the administrative law judge does not find in the affirmative on each issue in Subsection (a), the department shall: . . . (2) reinstate the person's driver's license. . . ." TEX. TRANSP. CODE § 524.035(c).

21. 363 S.W.3d at 612.

22. *Id.* at 613 (Jones, C.J., dissenting).

23. 54 Tex.Sup.Ct.J. 538 (Feb. 8, 2011).

24. Act of May 24, 1969, 61st Leg., R.S., ch. 434, § 2, 1969 Tex. Gen. Laws 1468, 1468, formerly TEX.REV.CIV. STAT. ANN. art. 6701*l*–5, § 2.

jecting the officer to the criminal penalty for perjury.[25] But in the 1973 overhaul of the Texas Penal Code, the Legislature created a new offense—for making a false statement in a governmental record [26]—and set the penalty the same as that for perjury.[27] When the license suspension statute was revised in 1983, the requirement that an officer's report be sworn was dropped in lieu of a provision specifically stating that the report was a governmental record under the Penal Code.[28] That provision was retained for refusal cases when the Legislature, in 1993, adopted a comprehensive, statewide ALR program,[29] but was dropped in the 1995 recodification, obviously as surplusage, given the Penal Code's broad definition of governmental records—"anything ... kept by government for information".[30] Though it may certainly be argued that the formality of an oath focuses the affiant's attention on the importance of complete truthfulness,

the Legislature concluded that the desired assurance of veracity was provided by the criminal penalty for making a false statement in a governmental record.

The 1993 statute provided for the first time for administrative license suspension in cases when a driver's specimen failed to pass the alcohol concentration test [31] (which were formerly handled by the courts)—now chapter 524. These provisions required that the officer's report be sworn.[32] Though it is not clear why the requirement should have been included for failure cases when it had been abandoned for refusal cases, it is perfectly clear that the purpose of the requirement—an assurance of truthfulness—is as fully served in failure cases by the criminal penalty for making a false statement in a governmental record as it is in refusal cases.

Although chapters 524 and 724 describe the arresting officer's report differently, nothing in the differences suggests that

**25.** TEX. PENAL CODE art. 302 (1925) ("Perjury is a false statement, either written or verbal, deliberately and wilfully made, relating to something past or present, under the sanction of an oath, or such affirmation as is by law equivalent to an oath, where such oath or affirmation is legally administered, under circumstances in which an oath or affirmation is required by law, or is necessary for the prosecution or defense of any private right, or for the ends of public justice.").

**26.** Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 948, codified as TEX. PENAL CODE § 37.10 ("A person commits an offense if he: (1) knowingly makes a false entry in, or false alteration of, a governmental record ...."); *see* STATE BAR COMM. ON REVISION OF THE PENAL CODE, TEXAS PENAL CODE: A PROPOSED REVISION 270 (Final Draft Oct. 1970) ("[Proposed § 37.10] broadens Texas law to include a prohibition against making false entries in governmental records.").

**27.** Both are Class A misdemeanors. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 948, codified as

TEX. PENAL CODE § 37.10(c); TEX PENAL CODE § 37.02(b).

**28.** Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 4, 1983 Tex. Gen. Laws 1568, 1579, formerly TEX.REV.CIV. STAT. ANN. art. 6701*l*–5, §§ 2(d) and 2(h).

**29.** Act of May 29, 1993, 73rd Leg., R.S., ch. 886, § 9, 1993 Tex. Gen. Laws 3515, 3526, formerly TEX.REV.CIV. STAT. ANN. art. 6701*l*–5, § 2(t).

**30.** Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 948, codified as TEX. PENAL CODE § 37.01(1), now § 37.01(2).

**31.** Act of May 29, 1993, 73rd Leg., R.S., ch. 886, § 1, 1993 Tex. Gen. Laws 3515, 3516–3520, formerly TEX.REV.CIV. STAT. ANN. art. 6687b–1, now TEX. TRANSP. CODE §§ 524.001–.051.

**32.** Act of May 29, 1993, 73rd Leg., R.S., ch. 886, § 1, 1993 Tex. Gen. Laws 3515, 3516, formerly TEX.REV.CIV. STAT. ANN. art. 6687b–1, § 3(a), now TEX TRANSP. CODE § 524.011(b)(4)(D).

the report should be sworn in failure cases and not sworn in refusal cases. In failure cases, the report must

(1) identify the arrested person;

(2) state the arresting officer's grounds for believing the person committed the offense;

(3) give the analysis of the specimen if any; and

(4) include a copy of the criminal complaint filed in the case, if any.[33]

In refusal cases, the report must

(1) show the grounds for the officer's belief that the person had been operating a motor vehicle ... while intoxicated; and

(2) contain a copy of:

(A) the refusal statement requested ...; or

(B) a statement signed by the officer that the person refused to:

(i) submit to the taking of the requested specimen; and

(ii) sign the requested statement.... [34]

In both situations, the report must be filed within five days of the arrest on a form prescribed by the Department.[35] Department regulations echo the statutory requirement that the report be sworn in failure cases but otherwise prescribe the same information in both reports, except for differences due to whether the driver refused to give a specimen or the specimen failed the test.[36] In both instances, a report's veracity is assured by the prohibition against false statements in government records.

SOAH's Rule 159.23 applied to officer reports in both refusal and failure cases alike, just as the rule that replaced it does,

current Rule 159.211.[37] The court of appeals read the rule to exclude unsworn reports only in failure cases, but nothing in the rule justifies the distinction. If under the rule only sworn reports are admissible, then unsworn reports are inadmissible in both failure and refusal cases. That is Caruana's reading of the rule. But without an arrest report in evidence, the proof necessary to sustain suspension of a license in a refusal case can come only from the arresting officer, who would usually find it difficult, if not impossible, to recall a particular arrest. SOAH's rule, as construed by Caruana, would hinder and often preclude license suspensions in refusal cases. Nothing in chapter 724 suggests that the Legislature intended such a result. The lack of any requirement that the arrest report be sworn should make license suspension easier if anything, certainly not harder. It is unreasonable to conclude that SOAH presumed upon itself to create impediments to license suspension where none existed in the statute by adopting procedural rules for ALR proceedings. The only reasonable conclusion, fully supported by Rule 803(8), is that arrest reports are admissible without being sworn.

The court of appeals was concerned that allowing admission of reports under Rule 803(8) makes Rule 159.23's express admission of sworn reports mere surplusage. We think that SOAH, in crafting its rules, was understandably careful to adhere to all statutory requirements. But chapter 524 requires only that arrest reports be sworn; it does not make verification a condition of inadmissibility, any more than the five-day deadline, or the requirement that approved forms be used. Read liter-

---

33. Tex. Transp. Code § 524.011(c).

34. *Id.* § 724.032(b).

35. *Id.* §§ 524.011(b)(4), 742.032(c).

36. *Compare* 37 Tex. Admin. Code § 17.4(1) (2012) (Tex. Dep't Pub. Safety, ALR Reports) (for refusal cases) *with id.* § 17.4(2) (for failure cases).

37. 1 Tex. Admin. Code § 159.211.

ally, Rule 159.23 is consistent with chapter 524.

The court of appeals was also concerned that the Department not be allowed to circumvent chapter 524's requirement of a sworn report. But chapter 524 does not prescribe the consequence for a failure to satisfy that requirement or others. If some sanction should be imposed, it need not be automatic exclusion of an arrest report. If the Department's failure to follow statutory procedures substantively affects a suspension hearing, the ALJ certainly has authority to provide a remedy in that case.

In that regard, we note that public offices' reports which meet the requirements of Rule 803(8) are not excluded from evidence as hearsay "unless the sources of information or other circumstances indicate lack of trustworthiness." [38] In determining whether such circumstances exist, an ALJ has discretion to consider whether an officer's failure to swear to a report casts doubt on the facts stated in it or was merely an oversight. In this case, the ALJ concluded that the report should be admitted. That conclusion was not precluded by SOAH's rules or by chapter 524.

The concurrence argues that "peace officers' reports, when offered by [DPS] in an ALR proceeding, lack the trustworthiness necessary to come within the public records hearsay exception",[39] period, "because of the 'presumed unreliability of law enforcement observations in an adversarial, investigative setting'".[40] We do not share this presumption. Rule 803(8) excludes investigative reports when offered

against the defendant in a criminal case, not because law enforcement officers are disinclined to be truthful, but because a criminal case pits law enforcement and defendants as adversaries, and conviction should not be based on an officer's testimony offered *in absentia.* ALR proceedings are civil, not criminal. Law enforcement investigation reports are commonly admitted in civil cases—car wrecks, for example. The concurrence cites no authority for the categorical exclusion of such reports in civil cases that, in the concurrence's words, "share[ ] many characteristics of a criminal prosecution for the same underlying conduct."

The concurrence founders on the fact that Rule 803(8) does not distinguish between sworn and unsworn reports. A report is no less admissible in a civil case merely because it is unsworn, nor is a report any more admissible against the defendant in a criminal case because it is sworn. No case cited by the concurrence draws the distinction it does. The concurrence argues that the administration of an oath "impresses upon [the officer] the seriousness of the matter and reinforces that his statement is subject to penalties if untrue." [41] But by statute, "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law" as long as it is "subscribed ... as true under penalty of perjury".[42] *Id.* § 132.001(c)(2). The verity of a declaration is thus assured by the criminal penalties for perjury, not a raised arm.[43]

---

**38.** Tex.R. Evid. 803(8).

**39.** *Post* at 565–66.

**40.** *Post* at 568 (citing *Fischer v. State,* 252 S.W.3d 375 (Tex.Crim.App.2008)).

**41.** *Post* at 572–73.

**42.** Tex. Civ. Prac. & Rem.Code § 132.001(a), (c)(2).

**43.** The concurrence also argues that because Flores' report fails to state that it was made under penalty of perjury, he did not have "the seriousness of the matter" impressed upon him. But, even accepting the concurrence's

Finally, the concurrence would exclude unsworn reports in Chapter 724 "refusal" cases even though nothing in the law requires that they be sworn. Surely a report that meets all requirements of law should be admissible.

The ALJ acted within his discretion in admitting the officer's report. Thus, the judgment of the court of appeals must be reversed. In accordance with the Department request, we remand the case to the court of appeals to consider whether the ALJ's ruling sustaining suspension of Caruana's license was supported by substantial evidence.

Chief Justice JEFFERSON filed a concurring opinion, in which Justice LEHRMANN joined.

Chief Justice JEFFERSON, joined by Justice LEHRMANN, concurring.

The moment an officer pulls a driver over for suspected drunk driving, the officer and the driver are adversaries. Absent a roadside confession, the driver will plead innocence, and the officer will accumulate evidence to suspend the driver's license or worse. The officer's subsequent report is more than an official public record. At a minimum, it is an accusation that threatens the defendant's ability to get to work or school. The inclination to believe the officer's account is strong—his mission is to protect the public from the scourge of drunk driving. But the law requires skepticism. It insists that the state prove its case before a driver's license may be suspended. In the context of this case, the law requires the officer to swear that the contents of his report are true. I disagree that a court can disregard the officer's refusal to take that oath.

Courts, accustomed to mediating adversarial disputes, regularly exclude documents that are created under circumstances that call their credibility into doubt. Most business records fall outside that category. Records implying criminal conduct do not.

I recognize that license suspension is a civil action, but the underlying accusation bears all the hallmarks of a criminal case in which the individual faces the threat of incarceration. The Texas Legislature has written a statute, and SOAH a rule, that carefully negotiates the roles of the two adversaries before our Court today. Because the driver here had an opportunity to confront his accuser, who took an oath before testifying at the hearing, I concur in the Court's judgment. I cannot join the opinion, however, because the Court's holding would excuse not only the officer's failure to swear to the truth of the report, but would permit suspension of a driver's license even if the officer never formally swears to the facts the report depicts. I would not go that far.

## I. Peace officers' unsworn reports are inadmissible under the Texas Rules of Evidence when offered by the Department in an Administrative License Revocation hearing.

The Court reasons that SOAH rule 159.23's statement that sworn reports are admissible as public records does not require the converse. Instead, the Court concludes that unsworn reports about driver intoxication are always admissible as public records under our evidentiary rules. I disagree. I would hold that peace officers' reports, when offered by the Department in an ALR proceeding, lack the

interpretation of § 132.001(c)(2), the report's standard form still includes language showing that it is to be "sworn and subscribed to" by its author. Although the jurat should have been completed by a notary public, instead of

Flores, its language still served to put Flores on notice of his duty to tell the truth, of which, of course, he should already have been aware.

trustworthiness necessary to come within the public records hearsay exception. A peace officer's report is admissible only if it satisfies rule 159.23's requirement that it be sworn or if the officer swears in court to its contents. *See* 1 TEX. ADMIN. CODE § 159.23(c)(7) (2009) ("An officer's sworn report of relevant information shall be admissible as a public record."), *repealed* 34 Tex. Reg. 334, 335 (2009) (now codified at 1 TEX. ADMIN. CODE § 159.211); *see also* TEX. TRANSP. CODE §§ 524.002, 724.003 (granting SOAH rulemaking authority over license suspension hearings).

Texas Rule of Evidence 803(8) permits the admission of public records that suggest the government has no ax to grind:

**Public Records and Reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth:

(A) the activities of the office or agency;

(B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or

(C) in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law;

*unless the sources of information or other circumstances indicate lack of trustworthiness.*

TEX.R. EVID. 803(8) (emphasis added); *see also* FED.R.EVID. 803(8).[1]

Important to any 803(8) analysis is not just whether the document qualifies under provision (A), (B), or (C), but also whether it satisfies the rule's catchall trustworthiness requirement. Rule 803(8) of both the Federal and Texas Rules of Evidence makes clear that a public record is admissible only if there is no reason to doubt that its author's observations are totally reliable.

The rule provides for the admission of a public record when the author has a legal duty to report it. According to the Federal Advisory Committee, the "[j]ustification for the [public records hearsay] exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." FED.R.EVID. 803(8) advisory committee's note. This rationale does not extend to the state's use of police reports, which are excluded from the public records exception under both the Federal and Texas Rules of Evidence when offered against a defendant in a criminal case. FED. R. EVID. 803(8)(A)(ii)–(iii);[2] TEX.R. EVID. 803(8)(B)–(C).[3] As noted by the Fifth Circuit,

**1.** The Texas hearsay exception for public records and reports is similar to the federal rule. *Compare* FED.R.EVID. 803(8), *with* TEX.R. EVID. 803(8). When the federal and Texas rules of evidence are similar, we look to federal case law and the Federal Advisory Committee Notes when interpreting the Texas rules. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 248–49 (Tex.1999).

**2.** Federal Rule 803(8) was amended in 2011 for stylistic purposes. The substance of former Rule 803(8)(B) and (C) is now found in 803(8)(A)(ii) and (iii).

**3.** This exclusion from the public records hearsay exception only precludes a police report from being admitted as documentary evidence against the defendant in a criminal case—it does not prohibit the police officer from testifying about the events observed in the inadmissible report. Although a law enforcement officer's report is inadmissible under Rule 803(8)(B), an officer may refer to the report to refresh memory, (but only after claiming insufficient recollection), and may then testify from refreshed memory, even though the officer's testimony is identical to the contents of his or her offense report. *See* TEX.R. EVID. 803(5); *Baker v. State*, 177 S.W.3d 113, 123 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

[O]stensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant were not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.

*United States v. Quezada,* 754 F.2d 1190, 1193–94 (5th Cir.1985) (quoting S.REP. No. 93–1277 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7064). Thus, "the reason for Federal Rule of Evidence 803(8)(B), after which the Texas rule was modeled, was the presumed unreliability of observations that are made by officers at the scene of a crime."[4] *Pondexter v. State,* 942 S.W.2d 577, 585 (Tex.Crim.App. 1996). While these concerns are not implicated when officers are "conducting routine business matters," they are applicable when the report is the precursor to prosecution. *Id.* at 585.

The Court of Criminal Appeals has explained that "[b]oth the federal and Texas hearsay rules have always excluded the crime-scene or investigation observations of law enforcement officers because their factual observations, opinions, and narrations are made while the officer is 'engaged in the often competitive enterprise of ferreting out crime.'" *Fischer v. State,* 252 S.W.3d 375, 382 (Tex.Crim.App.2008) (quoting *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948)). The Court of Criminal Appeals noted that "[t]he reason for this exclusion [in 803(8)] is the inherently adversarial nature of any on-the-scene or *post hoc* investigation of a criminal suspect." *Id.* at

---

4. The federal courts of appeals are generally in agreement that the public records exception presumes the unreliability of criminal police reports containing on-the-scene observations of police officers when offered by the government in criminal cases. *See United States v. Dowdell,* 595 F.3d 50, 70–71 (1st Cir.2010) ("The Rule's enactment history indicates that 'the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.'") (citation omitted); *United States v. Hatfield,* 591 F.3d 945, 952 (7th Cir.2010) (noting that the concern of the drafters of the exception in Rule 803(8)(B) was "that reports by law enforcers are less reliable than reports by other public officials because of law enforcers' adversary relation to a defendant against whom the records are sought to be used"); *United States v. Russell,* 156 F.3d 687, 691–92 (6th Cir.1998) ("[W]e are also mindful that police investigative reports used against a defendant in a criminal trial are generally regarded as unreliable and are excluded as a matter of law as inadmissible hearsay at trial."); *United States v. Brown,* 9 F.3d 907, 911 (11th Cir.1993) ("In excluding from the public records exception those matters observed by police officers and other law enforcement personnel, Congress was concerned about the adversarial nature of the relationship between law enforcement officials and defendants in criminal proceedings.... Congress was aware of the inherent bias that might exist in reports prepared by law enforcement officials in anticipation of trial.") (citations omitted); *United States v. Enterline,* 894 F.2d 287, 290 (8th Cir.1990) ("It is clear that the exclusion [in Rule 803(8)(B)] concerns matters observed by the police at the scene of the crime. Such observations are potentially unreliable since they are made in an adversary setting, and are often subjective evaluations of whether a crime was committed."); *Quezada,* 754 F.2d at 1193 ("The law enforcement exception in Rule 803(8)(B) is based in part on the presumed unreliability of observations made by law enforcement officials at the scene of a crime, or in the course of investigating a crime...."); *United States v. Hernandez–Rojas,* 617 F.2d 533, 535 (9th Cir.1980) (stating that "the subjective report made by a law enforcement official in an on-the-scene investigation ... lack[s] sufficient guarantees of trustworthiness because [it is] made in an adversary setting [and is] likely to be used in litigation").

382–83.[5] Therefore, because of the "presumed unreliability of law enforcement observations in an adversarial, investigative setting," under our evidentiary rules, police reports are excluded from the public records hearsay exception in criminal cases when offered against the defendant. *Id.* at 385.

This same rationale applies to the observations and conclusions of police officers made in DWI investigations. As the Court of Criminal Appeals has explained:

> [O]n-the-scene observations and narrations of a police officer conducting a roadside investigation into a suspected DWI offense are fraught with the thought of a future prosecution: the police officer is gathering evidence to use in deciding whether to arrest and charge someone with a crime. Calculation and criminal litigation shimmer in the air; the officer is gathering evidence, he is not making an off-hand, non-reflective observation about the world as it passes by.

*Id.* at 384.[6]

An ALR hearing shares many characteristics of a criminal prosecution for the same underlying conduct. The Court overlooks the fact that civil cases in which police reports are admissible generally involve two private parties and a claim for monetary damages—cases involving insurance claims or liability for car wrecks, for example.[7] *See United States v. Smith*, 521 F.2d 957, 966 (D.C.Cir.1975) ("In many cases where police records are offered, the litigation is civil in nature and between private parties. Thus the record has not been prepared at the behest of either par-

---

**5.** *See also Cole v. State*, 839 S.W.2d 798, 811–12 (Tex.Crim.App.1990) (noting that Rule 803(8)'s "broad language, read in light of the legislative history as a whole, leads to the conclusion that Congress' broader concern was with the potentially prejudicial influence of an adversarial setting and with a defendant's confrontation rights"); *McLeod v. State*, 56 S.W.3d 704, 710 (Tex.App.-Houston [14th Dist.] 2001, no pet.) ("The exclusionary clause [in Texas Rule of Evidence 803(8)(B) ], which prohibits from this hearsay exception matters observed by police officers, only applies where possible impairment of judgment is implicated, such as observations made by officers at the scene of a crime."); *Perry v. State*, 957 S.W.2d 894, 899 (Tex.App.-Texarkana 1997, pet. ref'd) (noting that the limitation on the admissibility of police reports in the criminal context is "based on the presumption that observations by an officer at a scene of a crime are not as reliable as observations by other public officials" because of "the adversarial nature of the confrontation between the defendant and the police in the criminal context") (citations omitted).

**6.** Although *Fischer* addressed whether a law enforcement officer's factual observations of a DWI suspect, contemporaneously dictated on his patrol-car videotape, were admissible under the present sense impression exception to the hearsay rule, the Court of Criminal Appeals looked to the rationale behind the exclusion of police reports from the public records exception to conclude that the officer's observations were inadmissible. *Id.* at 376, 383. The Court held that, although the public records exception does not trump the present sense impression exception, the same reasons for excluding law enforcement reports under the public records exception required them to hold that such observations should not be admissible as present sense impressions. *Id.* Although *Fischer* did not involve the precise question before us, its discussion regarding the exclusion of police reports under the public records exception is equally applicable here.

**7.** *See, e.g., McRae v. Echols*, 8 S.W.3d 797, 799–800 (Tex.App.-Waco 2000, pet. denied) (holding that an officer's conclusions and opinions regarding a collision between a car and a forklift in an accident report fell within the public records exception to the hearsay rule); *Sciarrilla v. Osborne*, 946 S.W.2d 919, 923–24 (Tex.App.-Beaumont 1997, pet. denied) (holding that state trooper's written report regarding his accident reconstruction investigation and findings fell within the business records and public records exceptions to the hearsay rule).

ty, the [issue regarding the trustworthiness of documents prepared with an eye towards litigation] does not arise, and the records are routinely admitted."). But in this case, the defendant and the State are rivals. In an ALR proceeding, the police officer is an interested party who prepares a criminal offense report to wield the strong arm of the State against a person accused of unlawful acts.[8]

After the Department suspends a defendant's license, the driver has the right to challenge that decision in an administrative hearing. In that adversarial setting, the Department must prove that the State had reasonable suspicion to stop or probable cause to arrest the defendant for driving while intoxicated. TEX. TRANSP. CODE § 524.035. This mirrors the elements of a criminal DWI prosecution. *See* TEX. PENAL CODE § 49.04(a) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place."). As in a criminal trial, the State seeks to punish.

Accordingly, the sources of information comprising a DWI report and the circumstances under which it is made call its trustworthiness into question, generally making it inadmissible as a public record under Texas Rule of Evidence 803(8)—whether the report is sworn or unsworn. *See* TEX.R. EVID. 803(8) (allowing admission of "records, reports . . . of public offices or agencies . . . unless the sources of information or other circumstances indicate lack of trustworthiness"). Trooper Flores's report would be inadmissible as a public record if offered by the State in Caruana's DWI prosecution. It should be equally inadmissible as a public record to suspend his license. The only vehicle for admission of peace officer DWI reports in ALR pro-

ceedings is SOAH rule 159.23, which requires that the report be *sworn*. This is true even in refusal cases, where peace officers are only required to submit a "written report of the refusal." TEX. TRANSP. CODE § 724.032(a)(4).

The Court correctly notes that rule 159.23 applies to both refusal and failure cases. The court of appeals read rule 159.23 to exclude unsworn reports only in failure cases, relying on the Fourth Court of Appeals' decision in *Texas Department of Public Safety v. Pruitt*, 75 S.W.3d 634 (Tex.App.-San Antonio 2002, no pet.). In *Pruitt*, the court of appeals held that a report in a refusal case need not be sworn in order to be admissible because the officer was not required to file a sworn report under the Transportation Code. *Id.* at 638–39. The court of appeals below agreed with *Pruitt*'s reasoning and concluded that its holding logically implied that in failure cases, where "the statutory language specifically requires a 'sworn report,' as opposed to merely a written one, [the report] must be properly sworn in order to be admissible." 363 S.W.3d at 610. Thus, the court of appeals read rule 159.23 to exclude unsworn reports in failure cases, but not in refusal cases.

As the Court notes, nothing in the rule justifies this distinction. Rule 159.23 does not differentiate between the two types of cases. To the contrary, the rule requires sworn reports in *both* failure and refusal cases. The Court worries that making an unsworn report inadmissible in both a failure and a refusal case would compromise the Department's case in the latter. According to the Court, "without an arrest report in evidence, the proof necessary to sustain suspension of a license in a refusal

---

8. *Cf. Layton City v. Peronek,* 803 P.2d 1294, 1297 (Utah Ct.App.1990) (holding that a jail incident report offered by the government in a civil probation revocation proceeding "is on substantially the same footing" as a police report in a criminal case and thus lacks sufficient reliability to be admissible as a business or public record)..

case can come only from the arresting officer, who would usually find it difficult, if not impossible, to recall a particular arrest." 363 S.W.3d at 563. More burdensome? Yes, but we should embrace a burden that guards against wrongfully penalizing the innocent. In any event, in refusal cases, the Department need not prove the defendant was actually intoxicated, it need only show that he refused a breath or blood alcohol concentration test.[9] If the officer cannot recall the particular arrest, he may use the report to refresh his memory at the hearing. *See* Tex.R. Evid. 612. Requiring an officer to testify from refreshed memory would no more "hinder and often preclude license suspension hearings in refusal cases," than it would hinder and preclude convictions in criminal DWI trials.[10] 363 S.W.3d 610.

## II. If, however, the officer appears and is subject to cross-examination under oath, it is within the administrative law judge's discretion to admit an unsworn report.

Forensic science reports are inadmissible in the criminal context because they lack the normal components of trustworthiness. The risk that a conviction will rest on an inaccurate entry on a page motivates its exclusion. That risk can be tolerably minimized when the officer takes an affirmative oath that its contents are true. SOAH rule 159.23 adopts that approach by making it clear that sworn reports are admissible in ALR proceedings.

But the rule does not end there. It provides other safeguards for both sworn and unsworn reports:

> However, the defendant shall have the right to subpoena the officer.... If the defendant timely subpoenas an officer and the officer fails to appear without good cause, *information* obtained from that officer shall not be admissible.

1 Tex. Admin. Code § 159.23 (emphasis added). Thus, rule 159.23 also conditions the admissibility of the peace officer's report on the subpoenaed officer's availability for cross-examination. *See Richardson v. City of Pasadena*, 513 S.W.2d 1, 3–4 (Tex.1974) (noting that the right to cross-examine a witness is vital and applies even in administrative proceedings). SOAH, by rule, gives the civil ALR defendant safeguards available to criminal defendants to maximize the trustworthiness of information used to suspend or revoke a driver's license.

The U.S. Supreme Court's recent hearsay and Confrontation Clause cases provide a useful comparison. The Confrontation Clause guarantees a defendant's right to confront "those who 'bear testimony'" against him. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez–Diaz v. Massachusetts*, 557 U.S. 305,

---

9. In an administrative hearing in which the Department seeks to suspend an individual's license based on a refusal to submit a specimen, it must prove four things: (1) reasonable suspicion or probable cause existed to stop or arrest the person; (2) probable cause existed to believe the person was operating a motor vehicle in a public place while intoxicated; (3) the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and (4) the person refused to submit to the taking of a specimen on request of the officer. *See* Tex. Transp. Code § 724.042; *Tex. Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 879 (Tex.App.-Fort Worth 2009, no pet.) (en banc).

10. Moreover, in refusal cases, the defendant's signed statement of refusal, *see* Tex. Transp. Code § 724.031, would be admissible against the defendant in an ALR hearing as an admission by party-opponent. *See* Tex.R. Evid. 801(e)(2).

129 S.Ct. 2527, 2531, 174 L.Ed.2d 314 (2009). Thus, an ex parte out-of-court affidavit is inadmissible in a criminal prosecution for cocaine possession, because the defendant had no opportunity to confront the analyst who prepared the report. *Id.* at 2542.

The Flores report falls within the core class of "testimonial" statements that the U.S. Supreme Court described as "the principal evil at which the Confrontation Clause" is directed. *Crawford,* 541 U.S. at 50, 124 S.Ct. 1354.[11] Included within this class are forensic science reports, which are "affidavits" and are "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " *Melendez–Diaz,* 129 S.Ct. at 2532 (citation omitted). Because "[f]orensic evidence is not uniquely immune from the risk of manipulation," forensic science "affidavits do not qualify as traditional official or business records." *Id.* at 2536–38. As the Court explained, "business and public records 'are generally admissible absent confrontation ... because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Bullcoming,* 131 S.Ct. at 2714 n. 6 (citing *Melendez–Diaz,* 129 S.Ct. at 2539–40). Thus, forensic reports, containing testimonial statements, may not be introduced against the accused at trial unless the person who made the report is unavailable and the accused had an opportunity, pre-trial, to cross-examine that witness. *Id.* at 2710.

The right of confrontation includes not only "a personal examination," but also (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Maryland v. Craig,* 497 U.S. 836, 845–46, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (citations omitted). These elements of confrontation—physical presence, oath, cross-examination, and observation of the demeanor of the witness by the trier of fact—enhance the accuracy of the fact-finding process by ensuring that evidence admitted against the defendant is reliable and subject to rigorous adversarial testing. *Id.* at 846, 110 S.Ct. 3157; *Romero v. State,* 173 S.W.3d 502, 505 (Tex.Crim.App. 2005).

Rule 159.23 provides analogous safeguards. It requires that a peace officer's report be sworn to be admissible. Even a sworn report is inadmissible if an officer does not appear in response to a subpoena. This is likely because an officer's failure to testify in support of his report indicates a lack of trustworthiness. Similarly, I would hold that unsworn reports, offered alone, are inadmissible under our evidentiary rules because they lack the same attributes of trustworthiness. On the other hand, if the officer appears, testifies under oath, and is subject to cross-examination, the concerns inherent in admitting unsworn police reports are minimized because the introduction of the report under

---

11. "To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.' " *Bullcoming v. New Mexico,* —— U.S. ——, —— n. 6, 131 S.Ct. 2705, 2714 n. 6, 180 L.Ed.2d 610 (2011) (plurality opinion) (citing *Davis v. Washington,* 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)).

such circumstances does not "colli[de] with confrontation rights" of an accused.[12] Fed.R.Evid. 803(8) advisory committee's note. As noted by the dissent below, hearsay problems may be overcome by administering an oath, requiring the witness's presence at trial, and subjecting the witness to cross-examination. 363 S.W.3d 606, 615 (Jones, C.J., dissenting) (concluding that "any problems with the perception, memory, narration, or sincerity of the facts stated in the unsworn report were overcome by Officer Flores's live testimony, under oath and subject to cross-examination, that the facts stated in the report were true and correct"). In that situation, it is within the judge's discretion to determine whether the lack of trustworthiness accompanying an unsworn report has been overcome.

The Court asserts that the "verity of a declaration is thus assured by the criminal penalties for perjury, not a raised arm." 363 S.W.3d at 564. It cites to recently amended section 132.001 of the Civil Practice and Remedies Code, which provides that "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by rule." Tex. Civ. Prac. & Rem.Code § 132.001(a). This version of the statute was not in effect at the time Trooper Flores's report was written, and the statute, by its terms, does not apply to the unsworn declaration in this case. See Act of June 17, 2011, 82d Leg., R. S., ch. 847, § 3, 2011 Tex. Gen. Laws 2119, 2120 ("Section 132.001, Civil Practice and Remedies Code, as amended by this Act, applies only to an unsworn declaration executed on or after the effective date of this Act [September 1, 2011]. An unsworn declaration executed before the effective date of this act is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose."). Even if it did, Trooper Flores's report does not comport with the statute's requirement that the unsworn declaration be "subscribed by the person making the declaration as true under penalty of perjury." Tex. Civ. Prac. & Rem.Code § 132.001(c)(2). Instead, the report merely states that Trooper Flores "certif[ies] the following information is true and correct." By requiring that the person declare under penalty of perjury that the contents of the unsworn declaration are true, section 132.001 serves the same function as requiring a person to take an oath—it impresses upon the author the seriousness of the

---

**12.** In fact, Congress excluded police reports in criminal cases from the public records exception precisely to avoid admission of evidence that is not subject to cross-examination. 2 Kenneth S. Broun, McCormick on Evidence § 296, at 332 (6th ed.2006); see also Enterline, 894 F.2d at 290 ("The exclusion [of matters observed by law enforcement officers in a criminal case] seeks to avoid admitting an officer's report of his observations in lieu of his personal testimony of what he observed."); United States v. Sawyer, 607 F.2d 1190, 1193 (7th Cir.1979) ("In our view, the legislative history of Rules 803(8)(B) and (C) indicates that Congress intended to bar the use of law enforcement reports as a substitute for the testimony of the officer. Thus, Representative Dennis, in offering the amendment which excluded law enforcement reports from admission at criminal trials, stated: What I am saying here is that in a criminal case, ... we should not be able to put in the police report to prove your case without calling policemen. I think in a criminal case you ought to have to call the policeman on the beat and give the defendant the chance to cross examine him, rather than just reading the report into evidence. That is the purpose of this amendment.") (citing 120 Cong. Rec. H2387–88 (statement of Rep. Dennis)); United States v. Grady, 544 F.2d 598, 604 (2d Cir.1976) ("In adopting this exception, Congress was concerned about prosecutors attempting to prove their cases in chief simply by putting into evidence police officers' reports of their contemporaneous observations of crime.").

matter and reinforces that his statement is subject to criminal penalties if untrue.

## III. Conclusion

The Court holds that a license may be taken away—even when the driver swears he is innocent—if an officer's unsworn report charges the driver with intoxication. I believe an oath is required. The oath should be taken, as the rule requires, when the officer signs the report. Failing that, the officer must take the oath in court so that the defendant's right to cross-examine his accuser is guaranteed. Because Caruana had the opportunity to confront Trooper Flores after he took an oath in open court, the administrative law judge had discretion to admit the report. For these reasons, I concur in the judgment.