**UNITED INTERESTS, INC., Appellant,**

v.

**BREWINGTON, INC., Appellee.**

**No. C14-86-033-CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 19, 1987.

Rehearing Denied April 30, 1987.

Anthony J. Sadberry, Phillip R. Livingston, Houston, for appellant.

Daniel Kistler, Houston, for appellee.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

JUNELL, Justice.

United Interests, Inc. (appellant) appeals from a judgment rendered in a non-jury trial granting permanent injunctive relief to Brewington, Inc. (appellee). At issue is the construction of certain written leases. In nineteen points of error, appellant challenges the trial court's findings of ambiguity and mutual mistake, its issuance of the injunction, its refusal to declare the rights of appellant under a sublease and its award of attorney's fees. Appellee also challenges the award of attorney's fees in a cross-point. The trial court's judgment is affirmed in part and reversed and rendered in part.

On May 12, 1967, Jack G. Jones, Trustee, and SCM Corporation executed a "build to suit" lease covering the land located at 5702 Hillcroft in Houston. Jones agreed to construct an office-warehouse building and lease it and the property to SCM for twenty years. Three land areas remained after construction of the building—one on the front and one each on the north and south sides of the building.

On July 21, 1983, SCM subleased approximately 6,168 square feet of the building to Sabel's T.V. Service, Inc. (Sabel). This lease was made subject to the Jones—SCM or master lease, with paragraph 20 stating the following:

> 20. *Parking of Automobiles.* General parking shall be in the front and on the north side of the general parking area and there shall be no assigned parking spaces provided for any Tenant in these areas.

On January 12, 1984, SCM subleased another 7,224 square feet of the building to Brewington, Inc. under the following arrangement. SCM (more commonly known as Smith-Corona) was engaged in the business of selling and repairing business machines; however, that company decided to close its factory service station in Houston and turn the servicing over to an authorized representative, who would make repairs on SCM's behalf and then bill SCM. SCM selected Brewington, a local typewriter company, as its representative and stipulated that Brewington move into its premises. SCM wanted the repair station to stay at that location because customers were familiar with it and because certain literature and the machines themselves contained that service address and phone number.

SCM appears to have copied the Brewington sublease from the Sabel sublease. Indeed, paragraph 8 of the Brewington sublease is identical to paragraph 9 of the Sabel sublease, which states that "Tenant shall be entitled to use the Demised Prem-

ises for the service and repair and sales of televisions and other related electronic equipment." Brewington sells and repairs typewriters and computer printers, but not televisions and other related electronic equipment. The Brewington sublease also was made subject to the master lease, and parking (paragraph 19) was provided for in language identical to that in the Sabel sublease.

On August 1, 1984, with SCM's consent, Brewington subleased 2,700 square feet of its lease space to Amstar Satellite Systems, Inc. Once again, the Sabel sublease appears to have been used as the model for this new sublease, though the "use" paragraph (paragraph 8) was changed to reflect Amstar's actual business. The parking paragraph (paragraph 19) once again remained unchanged.

On December 25, 1984, Jack G. Jones, Trustee, conveyed all of the property and the Hillcroft building to United Interests, Inc., Trustee, which purchased the property as trustee for a partnership consisting of United Interests, Inc. and others. One month later, SCM assigned all of its rights as lessee under the master lease to United Interests.

United Interests notified Brewington of the SCM assignment by letter of February 7, 1985, and also advised that a physical inspection of the premises was in progress. On February 20th, United Interests wrote Brewington that the inspection was complete, enclosed a copy of the repair bid and requested from Brewington a proportionate share (50% or $27,560.00) of the repair expenses. Thereafter, on March 18th, United Interests informed Brewington that, due to the latter's failure to contribute its share of the repair expenses or to make arrangements for the repairs, United Interests was giving formal notice of default under the Brewington sublease and reserved the right to terminate the sublease unless Brewington contributed to or arranged for repairs within thirty days.

There was no further communication until July 11, 1985, when United Interests'

attorney wrote Brewington that property immediately to the south of the building had been leased to CSI Collision Specialist, Inc. (d/b/a CSI Used Cars). The letter advised Brewington that this property included a portion of the parking area south of the building and that parking on the south side by Brewington's employees and customers would not be permitted. Almost immediately, Brewington filed suit for an injunction and a declaration of its rights under its sublease. United Interests counterclaimed for a declaration of its rights under the leases in question. CSI filed a related action for injunctive relief and damages against Brewington, and the causes of action were consolidated for trial. Following the trial, the court entered judgment for Brewington and filed Findings of Fact and Conclusions of Law. CSI is not a party to this appeal.

In points of error one through four, United Interests asserts that the trial court erred as a matter of law in finding ambiguity in the Brewington sublease; in allowing the admission of parol evidence to vary its terms; in allowing the admission of hearsay evidence to explain its terms; and in reforming the terms of the sublease.

In Conclusion of Law No. II, the trial court concluded that paragraphs 8 (use) and 19 (parking) of the sublease between SCM and Brewington were ambiguous. We agree. The question of whether a contract is ambiguous is one of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). When interpreting a contract, a court's primary concern is to ascertain and to give effect to the parties' intentions as expressed in the instrument. To do so, the court must examine and consider the entire instrument so that none of its provisions will be rendered meaningless. A contract is ambiguous only when the application of the pertinent rules of interpretation leaves it genuinely uncertain which one of two or more meanings is the proper one. If a contract is determined to be ambiguous, then extrinsic evidence is

admissible to discover its true meaning. *Id.* at 518–19. With these precepts in mind, we examine the sublease in question.

■ Paragraph 19 concerning parking is ambiguous in and of itself. Neither "general parking" nor "general parking area" is defined. The term "general parking" implies that there is also some other kind of parking. "General parking area" equates with the entire parking lot, and the paragraph could be interpreted as requiring that employees and customers park in the front of or on the north side of both the north and south parking areas. Finally, the paragraph does not read "in the front and on the north side of the *building*", which would more readily comport with United Interests' desired interpretation.

■ The ambiguity is compounded when paragraph 19 is considered with the rest of the sublease, particularly paragraph 15, which concerns remodeling of the premises. Brewington agreed to accept the premises "as is" "excepting repairs of parking lot and facade made at SCM's expense" (a phrase interlineated by Brewington's president). The paragraph did not address whether repairs were to be restricted to a certain part of the parking lot. Indeed, trial testimony confirmed that repairs were made to both the north and south parking areas and paid for by SCM. Brewington's concern about repairs to the parking lot suggests that a well-maintained one was essential to its occupancy of the building. This renders even more ambiguous a lease term that would then restrict the use of that lot.

■ The trial court found that the interlineation of paragraph 15 and the general ambiguity of paragraph 19 allowed parol evidence of Brewington's need for, as well as prior use of, the south parking lot. Again, we agree. Preston Whitfill was a service manager for SCM at the Hillcroft location. When Brewington contracted to do SCM's warranty work in the Houston area and moved into SCM's leased space, Whitfill went to work for Brewington. He,

therefore, was in a position to know what transpired during the tenures of both companies. Whitfill testified that SCM employees had parked on the south side of the building and that Brewington's employees continued to do so after the move. He further testified that deliveries to both companies were made to the back door on the south side of the building because the service department was located there and because delivery through the front of the building was difficult due to a narrow hallway and several sharp turns.

Johnny Johnson, Brewington's president, testified that the company utilizes the south lot in its day-to-day business. It is where employees and customers park, deliveries are received and sent and the trash dumpster is located. Were the south lot not available for Brewington's use, business would be adversely affected.

Both Lee Sabel, owner of Sabel's T.V. Service, Inc., which subleased from SCM, and Charles Harvey, owner of Amstar Satellite Systems, Inc., which subleased from Brewington, testified that Brewington's employees generally park in the south lot. Furthermore, the men stated that their employees also had used the south lot when the north and front lots were full (with Whitfill's and, later, Brewington's permission).

■ United Interests next complains of the admission of hearsay evidence to explain the terms of the SCM-Brewington sublease. This complaint appears to center on Preston Whitfill's testimony concerning his conversations about the parking lot with certain SCM representatives, particularly Sandy Swartzberg, a regional service manager. In a trial before the court, the presumption is that the court did not consider hearsay. *Landscape Design and Construction, Inc. v. Harold Thomas Excavating, Inc.,* 604 S.W.2d 374, 378 (Tex. Civ.App.—Dallas 1980, writ ref'd n.r.e.). Further, any error in its admission is harmless because there was sufficient evidence, without the hearsay, to resolve the ambiguity. *Id.* We refer to the above-cited

testimony regarding Brewington's need for and prior use of the south parking lot, as well as Johnny Johnson's testimony that he understood the lease area to include that lot.

■ Finally, United Interests' argument that the trial court erred in reforming the terms of the sublease is without merit. The trial court did not reform the terms of the sublease. Once the court found that certain paragraphs in the sublease were ambiguous, it admitted parol evidence to determine the parties' intentions and then interpreted the sublease, taking all its parts together and giving them such meaning as will carry out and effectuate to the fullest extent the parties' intention. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 519 (Tex.1968). Points of error one through four are overruled.

In points of error five through eight, United Interests argues that the trial court erred as a matter of law in finding mutual mistake in the execution of the Brewington sublease; in allowing the admission of parol evidence to vary its terms; in allowing the admission of hearsay testimony to explain its terms; and in reforming the terms of the sublease.

In Conclusion of Law No. I, the trial court found that the Brewington sublease was entered into as a result of mistake and/or mutual misconceptions in regard to paragraphs 8 and 19. We agree.

■ A mutual mistake of fact occurs when both parties to a transaction have a belief in the present existence of a thing, material to the transaction, that does not exist. Such would be the case where the parties to a contract have a common intention, but the written contract erroneously reflects that intention because of a mistake by both parties in writing the agreement. *Turberville v. Upper Valley Farms, Inc.,* 616 S.W.2d 676, 678 (Tex.Civ.App.—Corpus Christi 1981, no writ). Parol evidence is admissible to show that the writing, because of the mistake, incorrectly reflects the true agreement, and the equitable remedy of reformation is available to correct the mistake. However, the party claiming relief must show what the parties' true agreement was and that the instrument incorrectly reflects that agreement because of a mutual mistake. *Estes v. Republic National Bank of Dallas,* 462 S.W.2d 273, 275 (Tex.1970).

■ Upon examination of the Sabel and Brewington subleases, it is clear that the latter was copied from the former. They are identical in format and vary only in certain provisions specific to each company, such as rent and term of lease. This would explain the fact that the use paragraphs (9 in Sabel and 8 in Brewington) are exactly the same, regardless of the fact that Brewington sells and repairs typewriters rather than "televisions and other related electronic equipment" (Sabel's business). Clearly, the use paragraph was overlooked in the revision process, and this lends credence to Brewington's argument that the parking paragraph also was overlooked. The trial court thus properly admitted parol evidence to show that the lease incorrectly reflected the true agreement of the parties.

Johnny Johnson testified that when SCM stipulated that Brewington take over SCM's lease area as part of their arrangement, he understood that area to include *the south parking lot. No one ever indicated* to him that SCM would retain the right to lease that lot to a third party. He also understood that the only limitation in paragraph 19 on Brewington's use of the parking lot was that there were to be no assigned parking spaces. Johnson further testified that when he interlineated the language in paragraph 15 about repairs to the lot, he was referring to the south lot.

Taken in the context of the evidence concerning SCM and Brewington's prior use of the south lot, the repairs to it and the need for access to that lot, Johnson's testimony tends to establish what the parties' true agreement was. In addition, there is Preston Whitfill's testimony that as a principal

SCM employee during the period of negotiations between SCM and Brewington, he was never notified that the south parking lot was to be excluded from the lease area. Furthermore, he remembered discussing the repairs of that lot with Sandy Swartzberg, who agreed to do the repairs for Brewington at SCM's expense. Whitfill also testified that after the dispute over the parking lot arose between Brewington and United Interests, he called Swartzberg, who told him United Interests did not have the right to lease out the south parking area because that was part of the Brewington property.

Turning to the evidence that the sublease incorrectly reflects the agreement between SCM and Brewington because of a mutual mistake by both parties, we reiterate that the Brewington sublease clearly was copied from the Sabel sublease and, in the process, several paragraphs were overlooked. During trial Lee Sabel verified that the Sabel sublease provided for parking on the north side for his approximately thirty employees. Both Whitfill and Johnson testified that the Brewington sublease was prepared by the SCM legal department in New York City rather than in Houston. Whitfill also testified that Janice Smith in that department had acknowledged that the Brewington sublease was Sabel's sublease (with the implication that the allotted parking space was also Sabel's).

Johnny Johnson had an opportunity to review and change the parking paragraph in the sublease during both the original negotiations and the later leasing of space to Amstar and did not do so. Appellant argues this indicates that parking was not a material term of the sublease. However, the testimony regarding Brewington's utilization of the south lot in its day-to-day business disputes that assumption. It is equally possible that use of the south lot was so material to the agreement that both parties assumed it had been properly resolved. Indeed, when asked if it were possible that SCM planned to lease the lot to a third party, Preston Whitfill responded,

"Wouldn't make sense gaining money off of one side they would be taking it from the other because they would be screwing up the guarantee station."

 United Interests also objects to the admission of hearsay evidence to show the mutuality of the mistake. Again, we note that in a bench trial, the presumption is that the court did not consider hearsay, and any error in its admission is harmless as there was sufficient evidence without it to show mutual mistake. *Landscape Design*, 604 S.W.2d at 378.

 As to United Interests' contention in point eight that the trial court erred in reforming the terms of the Brewington sublease, the court was entitled to do so once it determined the existence of a mutual mistake. *Estes*, 462 S.W.2d at 275. In this case, however, the court simply filed conclusions of law stating both the intent of paragraph 8 and the most reasonable interpretation of paragraph 19 and then, in its judgment, permanently enjoined United Interests from interfering with Brewington's use of the south parking lot incidental to its rights under its sublease. Points of error five through eight are overruled.

 In points of error nine and ten, United Interests maintains that the court erred in declaring that the right to exclusive use and occupancy or the right to use any part of the south parking lot was and is incidental and necessary to Brewington's business and the effectuation of the intent of the sublease. In points eleven and twelve, United Interests argues that the court erred in declaring that Brewington has a right under the sublease to the exclusive use and occupancy of any portion of that lot. Point of error thirteen states that the court abused its discretion in issuing the injunction against United Interests.

As noted above, in its judgment the trial court permanently enjoined United Interests from interfering with Brewington's use of the south parking lot incidental to its rights under its lease. Nowhere did the

court declare that Brewington has the right to exclusive use and occupancy of the lot. Neither did the court declare that use of the lot is incidental and necessary to Brewington's business, though in its closing statements, the court made clear this was a key reason for ruling as it did. As previously discussed, the evidence supported this determination. Brewington is located on the south side of the building and access to the business by employees, customers and delivery persons is enhanced by access to the south parking lot, particularly as the service department is located at the back end of the south side. Furthermore, there are too few spaces in the front and north lots to accommodate all of the building's tenants and their customers, as evidenced by Lee Sabel's testimony that when the north lot was full, his employees parked in the south lot.

The trial court's judgment did not *declare* Brewington's rights under the sublease but rather upheld Brewington's rights under the sublease to use the lot. In its Conclusion of Law No. IV, the court interpreted those rights as including primary parking in the south lot, without limitation to use any of the parking areas on the leased premises, subject to the sole limitation that no tenant has the right to specifically reserve assigned parking places. Once the court found ambiguity and mutual mistake in the lease, it was then entitled to interpret it. *City of Pinehurst*, 432 S.W.2d at 519; *Estes*, 462 S.W.2d at 275.

Finally, United Interests' point of error that the trial court abused its discretion in issuing the injunction is without merit. This follows from our disposition of points one through twelve. Points of error nine through thirteen are overruled.

 In point of error fourteen, United Interests asserts that the trial court erred in refusing to declare the rights of United Interests under the sublease. The entry of a declaratory judgment rests within the discretion of the trial judge. *Crawford v. City of Houston*, 600 S.W.2d 891,

894 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Denying the losing party's requested relief is not an abuse of that discretion. Further, in its argument, United Interests states, "The question of United Interests' rights may best be addressed through a determination of Brewington's rights under its sublease with respect to the use of the South parking lot." In effect, this is what the trial court has done. By decreeing that Brewington has the right to use the south parking lot without interference, the court necessarily implies that United Interests does not have the right to interfere with that use. Yet, the sublease continues in full force and effect as to the other landlord/tenant rights. The fourteenth point of error is overruled.

 In point of error fifteen, United Interests complains that the trial court erred in declaring that the acts of United Interests constituted an attempted constructive eviction of Brewington and that those acts provided a legal basis to enjoin United Interests from pursuing its rights under the sublease. In his bench statements, the trial judge stated that the attempt to restrict Brewington's use of the south parking lot was tantamount to constructive eviction. There is evidence in the record that United Interests planned to redevelop this property and had discussed with its tenants the possibility of moving them. This evidence, coupled with the acts of United Interests in assessing excessive maintenance charges against Brewington, in declaring Brewington in default of its lease agreement and in leasing the south parking lot to CSI, supports the trial court's conclusion. Whether that conclusion may have provided the court with a legal basis for the injunction is immaterial. In actuality the court found that under the sublease Brewington had the right to use the south parking lot without interference and properly enjoined United Interests from so interfering. Point of error fifteen is overruled.

In point of error sixteen United Interests complains of the trial court's award of at-

torney's fees on appeal. In a cross-point Brewington attacks the trial court's failure to award it attorney's fees for legal services through the trial court. Brewington presented evidence of more than $26,000 in attorney's fees through the trial court, $2,500 for appeal through the court of appeals, and $1,000 for appeal to the supreme court. United Interests presented evidence of its attorney's fees in excess of $30,000 through the trial court, $3,000 for appeal through the court of appeals, and $2,000 for appeal to the supreme court.

The court awarded neither party attorney's fees through the trial court; however, it did award Brewington $10,000 should United Interests appeal to the court of appeals and Brewington prevail, and an additional $5,000 should United Interests apply for a writ of error and Brewington again prevail. United Interests argues that the court abused its discretion in its award of fees for appeal because it refused to award fees for trial and because the attorney's fees awarded for appeal are clearly excessive and unreasonable. Brewington charges the court with an abuse of discretion in failing to award it attorney's fees for legal services through the trial court.

■■■■ Regarding the cross-point, Brewington argues that given the evidence of United Interests' bad faith, an award of attorney's fees for trial was justified. The award of attorney's fees in a declaratory judgment action is discretionary. Tex.Civ. Prac. & Rem.Code § 37.009 (Vernon 1986) (formerly Tex.Rev.Civ.Stat.Ann. art. 2524–1 § 10 (Vernon 1965)). In supplemental findings of fact the court stated that it found no sufficient cause to justify the award of attorney's fees to either party for the trial phase. It is clear from this finding and from bench statements that the court recognized both parties had legitimate rights to pursue and, therefore, each should bear its own attorney's fees through the trial court. Given the facts of this case, this was not an unreasonable action by the trial court. Therefore, Brewington's cross-point is overruled.

■■■ Next we consider the trial court's award to Brewington of attorney's fees on appeal. Under the record before us we cannot understand how there could be sufficient cause to justify the award of attorney's fees on appeal, there being no sufficient cause to justify the award of such fees through the trial court. On this record and in light of the trial court's finding regarding attorney's fees through the trial court, we hold the trial court erred and abused its discretion in awarding to Brewington any attorney's fees on appeal.

United Interests' points of error seventeen, eighteen and nineteen concern the trial court's failure to declare the rights of the parties under the master lease after declaring that obligations for repair and maintenance were to be controlled in the future by that lease; the failure to declare the parties' obligations for repair and maintenance under the Brewington sublease as they existed prior to final judgment; and the court's error in declaring the parties' rights and Brewington's obligations under its sublease in such a manner that the controversy was not ended and indeed created piecemeal litigation.

■■■■ A trial court may grant a declaratory judgment where it would serve a useful, beneficial purpose. *Standard Fire Insurance Co. v. Fraiman*, 514 S.W.2d 343, 346 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ). In its final judgment, the trial court declares that no default by Brewington exists under the sublease. By further declaring that the master lease will henceforth govern Brewington's obligations, the court provides the framework within which both parties should operate. To declare rights and obligations under the lease anticipates a conflict which may well be resolved by the court's action regarding the use of the south parking lot. Anticipation of a conflict is not a proper subject for declaratory relief. *See Southern National Bank of Houston v. City of Austin*, 582 S.W.2d 229, 237 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). Entry of a declaratory judgment is discretionary, *Crawford*, 600

S.W.2d at 894, and we find no abuse of that discretion in this case. We therefore overrule points of error seventeen through nineteen.

The trial court's judgment is affirmed except as to the award to Brewington of attorney's fees on appeal. As to said attorney's fees the judgment is reversed and rendered.