

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00376-CV

———————————————

OTHALON SHAW, Appellant

V.

OMOWUNMI SHAW, Appellee

On Appeal from the 481st District Court
Denton County, Texas
Trial Court No. 25-4553-481

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Othalon Shaw (Husband) challenges a protective order entered against him for the protection of Appellee Omowunmi Shaw (Wife) under Title 4 of the Texas Family Code. Raising four issues, Husband argues that the evidence is legally and factually insufficient to support the trial court's findings that he had committed acts of family violence and would likely do so in the future and that the trial court abused its discretion by admitting certain police reports into evidence over his hearsay objections. We affirm.

## II. BACKGROUND

Husband and Wife married in February 2020, and Husband filed for divorce in December 2024.[1] According to Wife, Husband has mentally, physically, and emotionally abused her throughout their marriage. Because Husband had threatened her and because she was "fearful that [Husband] might do something to [her] or [her] family," Wife filed an application for a protective order.[2] The trial court signed a temporary ex parte order and set the application for hearing.

---

[1] Wife testified that she had not been "officially served" with Husband's divorce petition at the time of trial. She stated that Husband threatened her with divorce "all the time" and had filed "[a]bout three" other "official[]" divorce cases.

[2] The application for a protective order was filed by the Denton County District Attorney's Office (the State) on Wife's behalf; the State represented her at the protective-order hearings and filed an appellate brief on her behalf.

At the hearing, which spanned three days, Wife testified concerning Husband's constant abuse. She stated that Husband had threatened to have her deported, to kill her, and to kill "whoever [she] end[s] up with." She described a specific incident in April 2025 in which Husband had threatened to kill or deport her if she did not sign a certain document related to their pending divorce proceeding. She described another incident in which Husband—thinking that she had been communicating with another man on the phone—had "grabbed [her] from behind, twisted [her] hand, . . . collected the phone," and struck her on the head with it. She also testified that Husband had choked her, had forced her to have sex with him against her will, and had threatened her with a gun "many times." She offered into evidence pictures of Husband's gun as well as a video of her "begging [Husband] to take the gun away" after he had threatened her (the Gun-Threat Video).[3] She testified that she had reported Husband's abuse to law enforcement, and she offered into evidence two police reports, which were admitted over Husband's numerous objections, including hearsay.

Husband also testified and categorically denied all of Wife's abuse accusations. He accused Wife of financial fraud and argued that she had filed her protective-order application to gain an advantage in the couple's ongoing divorce proceeding.

---

[3]The Gun-Threat Video was taken after Husband had placed a gun under his pillow in the couple's shared bed. It depicts Wife's confronting him about the gun and begging him to remove it from their bedroom.

After considering all the evidence, the trial court found that Husband and Wife were members of the same family or household and that family violence had occurred and was likely to occur in the future. *See* Tex. Fam. Code §§ 71.004, 81.001, 85.001(a). Based on these findings, the trial court signed a final protective order prohibiting Husband from, among other things, communicating with Wife or her family members in a threatening or harassing manner; going within 200 yards of Wife's residence, school, or place of employment; or possessing a firearm or ammunition for two years. *See id.* §§ 81.001, 85.001(b)(1). At Husband's request, the trial court issued findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296, 297. In its written findings, the trial court explicitly stated that Wife's testimony was credible and that Husband's testimony was not. This appeal followed.

## III. DISCUSSION

### A. Sufficiency of the Evidence to Support Family-Violence Finding

In his first and second issues, Husband contends that the evidence is legally and factually insufficient to support the trial court's family-violence finding. We disagree.

#### 1. Standard of Review

When, as here, the trial court acts as factfinder, we review its findings under the familiar legal- and factual-sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *see also Watts v. Adviento*, No. 02-17-00424-CV, 2019 WL 1388534, at *3 n.3 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (mem. op.).

4

### a. Legal Sufficiency

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *Huskins v. Garcia*, No. 02-21-00328-CV, 2022 WL 3905083, at \*2 (Tex. App.—Fort Worth Aug. 31, 2022, no pet.) (mem. op.). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

### b. Factual Sufficiency

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that

the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If reversing for factual insufficiency, we must detail the evidence relevant to the issue in consideration and clearly state why the finding is factually insufficient—that is, why the evidence supporting the finding is so weak or is so against the great weight and preponderance of the evidence that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Pool*, 715 S.W.2d at 635.

Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). Acting as factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). An appellate court must not substitute its judgment for that of the factfinder. *Id.*

### 2. Analysis

The Texas Family Code provides that a trial court "shall render a protective order" if it "finds that family violence has occurred." Tex. Fam. Code §§ 81.001, 85.001(b)(1). As relevant here, "family violence" means

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury,

6

assault, or sexual assault, but does not include defensive measures to protect oneself.

*Id.* § 71.004(1).

As detailed above, Wife testified that Husband had, among other things, threatened her with a gun on numerous occasions, forced her to have sexual relations against her will, choked her, and struck her on the head with her phone. Standing alone, this testimony—which the trial court explicitly found to be credible—is sufficient to support the trial court's family-violence finding. *See Anjum v. Shams-Ul-Qamar*, No. 04-21-00586-CV, 2023 WL 6285331, at *4 (Tex. App.—San Antonio Sep. 27, 2023, no pet.) (mem. op.) (pointing out that "an applicant's testimony alone is sufficient to support findings in a protective order" (citing *Lummus v. Lummus*, No. 04-22-00350-CV, 2023 WL 242730, at *3 (Tex. App.—San Antonio Jan. 18, 2023, no pet.) (mem. op.))); *see also* Tex. Fam. Code § 71.004(1).

To support his argument that the evidence of family violence is insufficient, Husband points to various parts of the record that he claims undermine the credibility of Wife's testimony. But credibility is the factfinder's sole province, and we may not second-guess the factfinder's assessment of a witness's credibility or the weight to be given her testimony as part of our evidentiary-sufficiency review. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761; *see also Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998) (explaining that when conducting a factual-sufficiency review, "the court of appeals may not pass upon the witnesses' credibility or substitute its judgment for

that of the [factfinder], even if the evidence would clearly support a different result" (citing *Pool*, 715 S.W.2d at 634)). And even taking into account the portions of the record highlighted by Husband, we cannot conclude that the evidence supporting the trial court's family-violence finding is so weak or so contrary to the overwhelming weight of all the evidence that it should be set aside. *See Pool*, 715 S.W.2d at 635.

Husband makes much of the fact that no gun could actually be seen in the Gun-Threat Video. But because Wife consistently maintained that Husband had threatened her with a gun at times not shown on the video, the fact that no gun can be seen on the video does not undermine the trial court's family-violence finding.

Husband also emphasizes that Wife's testimony concerning Husband's acts of family violence was not corroborated by the police reports admitted into evidence or by photographs, medical records, or other documentary evidence. But no such corroboration is necessary. *See Anjum*, 2023 WL 6285331, at *4. And Husband overlooks the fact that portions of Wife's testimony actually were corroborated; for example, a photograph showing the injury that Wife sustained after Husband hit her in the head with her phone was admitted as an exhibit.

Husband highlights the fact that one of the police reports admitted into evidence reflected that Wife could not recall specific details about the choking incident. But this has no bearing on our evidentiary-sufficiency analysis. *Cf. Washington v. State*, 127 S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (rejecting factual-sufficiency challenge and pointing out that "[t]he

[factfinder] could have reasonably believed that [the complainant] was assaulted even if she failed to remember the specific details surrounding the assault clearly or was otherwise inconsistent").

Without citing authority, Husband claims that Wife's deciding to continue living with him, referring to him as "[m]y [d]ear" in correspondence, and acknowledging that she would stay married to him if she no longer felt threatened by him undermined her claim that she felt imminent physical harm. But this behavior is not necessarily inconsistent with Wife's being a victim of family violence. *Cf. Lessner v. State*, No. 02-15-00400-CR, 2016 WL 4473263, at *1 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication) (detailing expert's testimony "about the dynamics of family violence and typical behavior of domestic[-]violence victims in relation to their abusers," including "that it is 'fairly common' for victims of domestic violence to sign affidavits of nonprosecution out of fear, denial, and hope that the abuser will change" and "that it is common for victims to minimize the abuse they have suffered due to shame, embarrassment, and denial").

Husband contends that his unrebutted testimony that Wife had previously handled his gun "voluntarily and without fear is perhaps the strongest evidence against" the family-violence finding. But this argument does not pass the red-face test. *See Tharp v. Builders FirstSource-Texas Grp. L.P.*, No. 02-23-00223-CV, 2024 WL 123590, at *5 n.6 (Tex. App.—Fort Worth Jan. 11, 2024, no pet.) (mem. op.). Even if Husband's testimony were true, the mere fact that Wife was

9

comfortable handling Husband's gun herself has no bearing on whether Husband threatened her with it, nor would it preclude her from fearing imminent physical harm if Husband did, in fact, use the gun to threaten her.

Husband also claims that evidence showing that Wife had "pounced" on him after he had purportedly threatened her with a gun contradicts her claim that she felt "genuine fear." But such behavior is not inconsistent with extreme fear, which often triggers a "fight or flight" response. *Cf. Cano v. State*, No. 03-15-00485-CR, 2017 WL 3908640, at *8 (Tex. App.—Austin Aug. 24, 2017, pet. ref'd) (mem. op., not designated for publication) (recounting police officer's testimony that based on his training and experience, "if somebody is either very nervous or very scared, . . . they will [often] go into a fight or flight type response mode to where they will either try and fight their way out of it or try and run from it").

Finally, Husband points to his niece's testimony that she had never witnessed Husband threaten Wife and that the family-violence allegations were inconsistent with Husband's character. But the trial court, as factfinder, was free to disregard this testimony or to give it little weight. *See City of Keller*, 168 S.W.3d at 820 (explaining that the factfinder "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses"); *Jha v. Bank of Am., N.A.*, No. 02-22-00240-CV, 2023 WL 3113713, at *4 (Tex. App.—Fort Worth Apr. 27, 2023, no pet.) (mem. op.) ("While [appellant] testified that he had never agreed to the modified terms, the trial court, as factfinder, was free to disbelieve his testimony or to give it little weight."

(citing *Woods v. Woods*, 193 S.W.3d 720, 726 (Tex. App.—Beaumont 2006, pet. denied))).

In sum, considering the entire record and applying the applicable standard of review, we conclude that the credible evidence supporting the trial court's finding that family violence had occurred is not so weak that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Pool*, 715 S.W.2d at 635. Accordingly, the evidence supporting the challenged finding is factually sufficient— and, by extension, legally sufficient. *See id.*; *see also S.B. v. Tex. Dep't of Fam. & Protective Servs.*, 654 S.W.3d 246, 252 (Tex. App.—Austin 2022, pets. denied) ("Evidence that is factually sufficient to support a trial court's finding necessarily satisfies the legal-sufficiency standard.").

We overrule Husband's first and second issues.

## B. Sufficiency of the Evidence to Support the Finding That Family Violence Would Likely Occur in the Future

In his third issue, Husband argues that the record contains insufficient evidence to support the trial court's finding that family violence was likely to occur in the future. But because the Legislature amended Family Code Sections 81.001 and 85.001 effective September 1, 2023, to eliminate the required finding that family violence is likely to occur in the future, *see Z.S. v. L.S.*, 676 S.W.3d 845, 849 n.3 (Tex. App.—Fort Worth 2023, no pet.); *Brast v. Brast*, 681 S.W.3d 788, 792 n.2 (Tex. App.—Houston [14th Dist.] 2023, no pet.), this finding is not essential to the trial court's ruling.

11

Accordingly, we overrule Husband's third issue.[4]  *See Buffalo Sav. & Loan Ass'n v. Trumix Concrete Co.*, 641 S.W.2d 650, 654 (Tex. App.—Corpus Christi–Edinburg 1982, no writ) (overruling appellate points because they challenged findings that were not essential to the trial court's judgment); *see also Spillers v. Move Sols., Inc.*, No. 14-95-00712-CV, 1996 WL 445336, at *10 (Tex. App.—Houston [14th Dist.] Aug. 8, 1996, no writ) (not designated for publication) (same); *cf. Swantner-Carter v. Frost Nat'l Bank*, No. 13-06-00545-CV, 2008 WL 3521253, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 7, 2008, no pet.) (mem. op.) (holding that trial court had not erred by failing to issue findings of fact or conclusions of law regarding issues that were not essential to the cause of action).

---

[4]Even if the trial court's finding that family violence was likely to occur in the future had been essential to the trial court's ruling, we would nevertheless overrule Husband's third issue.  The trial court could reasonably have concluded that violence was likely to occur in the future based on Husband's pattern of violent and threatening behavior.  *See Dolgener v. Dolgener*, 651 S.W.3d 242, 261 (Tex. App.—Houston [14th Dist.] 2021, no pet.).  Furthermore, Husband denied that the incidents of family violence had occurred—a denial that the trial court necessarily disbelieved based on its written findings.  Given Husband's denial and lack of remorse, the trial court could have reasonably concluded that "history will repeat itself."  *Id.*; *see J.A.T. v. C.S.T.*, 641 S.W.3d 596, 611 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (holding that appellant's "failure to express any remorse for [committing] sexual assault [was] some evidence supporting a finding that family violence [was] likely to occur in the future" (citing *Dolgener*, 651 S.W.3d at 261)); *Cox v. Walden*, No. 13-20-00283-CV, 2022 WL 120014, at *4 (Tex. App.—Corpus Christi–Edinburg Jan. 13, 2022, no pet.) (mem. op.) ("The trial court could have reasonably concluded that this incident of family violence occurred[] and [that], based on his lack of remorse, [the appellant] was likely to commit family violence in the future.").

12

## C. Admission of Police Reports into Evidence

In his fourth issue, Husband contends that the trial court committed reversible error by admitting two police reports into evidence over his hearsay objections. We disagree.

### 1. Standard of Review

We review a trial court's ruling in admitting or excluding evidence under an abuse-of-discretion standard. *Richmond Condos. v. Skipworth Com. Plumbing, Inc.*, 245 S.W.3d 646, 664–65 (Tex. App.—Fort Worth 2008, pet. denied) (op. on reh'g) (citing *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000) (op. on reh'g)). A trial court abuses its discretion in admitting or excluding evidence if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002) (op. on reh'g); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

To obtain reversal of a judgment based on the erroneous admission or exclusion of evidence, an appellant must show not only that the trial court's ruling was in error but also that the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *Ledbetter v. Mo. Pac. R.R.*, 12 S.W.3d 139, 142 (Tex. App.—Tyler 1999, pet. denied). This standard does not require the complaining party to prove that but for the evidentiary ruling a different judgment would necessarily have resulted.

*Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, 648 S.W.3d 556, 577 (Tex. App.—Fort Worth 2022, pets. denied) (citing *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018)). Rather, if erroneously admitted or excluded evidence was crucial to a key issue, the error is likely harmful. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008). Determining whether a particular error is harmful depends on the particular case. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). In making this determination, we review the entire record. *Id.*

### 2. Analysis

Husband argues that the trial court abused its discretion by admitting two police reports into evidence because they constitute hearsay and do not qualify for admission under either the business-records or the public-records exceptions to the hearsay rule. *See* Tex. R. Evid. 803(6), (8). But Husband's assertion that "Texas courts . . . reject police reports under [the public-records exception]" paints with too broad a brush and thus mischaracterizes the law.

Although the public-records exception "excludes investigative reports when offered against the defendant in a criminal case," police reports "are commonly admitted in civil cases." *Tex. Dep't of Pub. Safety v. Caruana*, 363 S.W.3d 558, 564 (Tex. 2012); *see In re Commitment of Clark*, No. 09-15-00455-CV, 2017 WL 706473, at *1 (Tex. App.—Beaumont Feb. 23, 2017, no pet.) (mem. op.) ("Rule 803(8) of the Rules of Evidence generally provides an exception to hearsay for police records offered into

14

evidence in a civil case." (quoting *In re Commitment of Clemons*, No. 09-15-00488-CV, 2016 WL 7323298, at *9 (Tex. App.—Beaumont Dec. 15, 2016, pet. denied) (mem. op.))); *Nassar v. Tex. Alcoholic Beverage Comm'n*, No. 13-14-00187-CV, 2014 WL 6602294, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 20, 2014, no pet.) (mem. op.) (holding that police lab report was admissible as a public record under Rule 803(8) in an administrative proceeding because the proceeding was civil in nature). Thus, while any witness statements contained within a police report would constitute inadmissible hearsay, the report itself—and the police officer's factual findings contained within the report—may be properly admitted under the public-records exception if a proper foundation is laid.[5] *See* Tex. R. Evid. 803(8); *In re E.A.K.*, 192 S.W.3d 133, 145 n.17 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (noting that while a police officer's factual findings in a police report may qualify as a public record, the statements of witnesses in the report would not (citing

---

[5]Although Husband's fourth issue focuses on the trial court's admission of the police reports over his hearsay objections, he also argues that the reports were not properly authenticated as business records. *See* Tex. R. Evid. 902(10). Even broadly construing Husband's argument as a challenge to the authentication of the police reports as public records, we conclude that because they bear the seal of the Town of Little Elm, Texas, and the signature of the town secretary "purporting to be an execution or attestation," they were properly authenticated. *See* Tex. R. Evid. 902(1); *cf. Price v. State*, No. 02-10-00149-CR, 2011 WL 946978, at *3 (Tex. App.—Fort Worth Mar. 17, 2011, no pet.) (mem. op., not designated for publication) (holding that "pen packet relating to [appellant's] prior felony conviction" was self-authenticated as a public record because it "contain[ed] an affidavit of the custodian of records[] certifying that the records [we]re correct copies of original records and b[ore] her signature and the seal of the State of Texas").

15

*Corrales v. Dep't of Fam. & Prot. Servs.*, 155 S.W.3d 478, 486 (Tex. App.—El Paso 2004, no pet.))).

Because a protective-order application is a civil matter, *see Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 271 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.), and because the complained-of police reports are public records, we cannot conclude that the trial court abused its discretion by admitting them, *see Caruana*, 363 S.W.3d at 564; *Commitment of Clark*, 2017 WL 706473, at *1. Further, even if the reports contain certain statements constituting inadmissible hearsay, because the trial court—not a jury—acted as the trier of fact and because there is sufficient evidence apart from these hearsay statements to support the trial court's necessary findings, we must presume that the trial court did not consider any inadmissible hearsay. *See Gilmore v. Transit Grain & Comm'n Co.*, 213 S.W.2d 880, 882 (Tex. App.—Fort Worth 1944, no writ); *see also United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993) ("[A] judge, sitting as trier of fact, is presumed to have rested his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible." (quoting *Gov't of the Canal Zone v. Jimenez G.*, 580 F.2d 897, 898 (5th Cir. 1978))); *Zuniga v. Amistad Motors*, 677 S.W.3d 149, 153 (Tex. App.—El Paso 2023, no pet.) ("The trial court, sitting as the factfinder in this bench trial, could not have relied on improperly admitted evidence so we presume it disregarded the same." (citing *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 567 (Tex. App.—El Paso 2016, pet. denied))); *United Ints., Inc. v. Brewington, Inc.*, 729 S.W.2d 897, 904

16

(Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) ("[I]n a bench trial, the presumption is that the court did not consider hearsay, and any error in its admission is harmless as there was sufficient evidence without it to show mutual mistake."). Indeed, the trial court explicitly stated on the record that it would not consider any inadmissible hearsay contained in the reports.[6] Accordingly, we conclude that any error in the statements' admission was harmless. *See Brewington, Inc.*, 729 S.W.2d at 904; *see also Thomas v. Vannoy*, 898 F.3d 561, 567 (5th Cir. 2018) (recognizing that "judges, unlike juries, are presumptively insulated from any undue trial influence"); *In re S.L.*, 421 S.W.3d 34, 39 (Tex. App.—Waco 2013, no pet.) ("We assume without deciding that the trial court erred in overruling the hearsay objections, but the alleged error was harmless in this bench trial . . . .").

We overrule Husband's fourth issue.

## IV. CONCLUSION

Having overruled all of Husband's issues, we affirm the trial court's protective order.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: June 4, 2026

---

[6]Husband argues that because the police reports contain only hearsay, the trial court could not admit them "and then claim to disregard the inadmissible portions." But because we conclude that the public-records exception applies, we reject this argument.